691 P.2d 673

**STATE of Arizona, Appellee,**

v.

**Johnny Travis GOSWICK, Appellant.**

**No. 5989.**

Supreme Court of Arizona,
In Banc.

Nov. 21, 1984.

Robert K. Corbin, Atty. Gen., by William J. Schafer III and Ronald L. Crismon, Asst. Attys. Gen., Phoenix, for appellee.

Leonard N. Sowers, Kearny, and J.M. Cardenas, Coolidge, for appellant.

CAMERON, Justice.

Defendant, Johnny Travis Goswick, was convicted and judged guilty of dangerous or deadly assault by a prisoner, A.R.S. § 13–1206, and possession of a deadly weapon by a prisoner, A.R.S. § 31–232. He was sentenced to the mandatory term of life imprisonment without possibility of parole for twenty-five years for the assault under the provisions of A.R.S. § 13–1206, and to a concurrent term of four years for the possession of a weapon, A.R.S. § 13–701. We have jurisdiction pursuant to Ariz. Const. Art. 6, § 5(3) and A.R.S. § 13–4031.

The issues we must resolve in this appeal are:

1. Was the trial court's failure to allow the defendant to elaborate further on the reasons for his confession error?
2. Was the defendant denied the effective assistance of counsel?
3. Was there sufficient evidence to support convictions of guilt on both counts?
4. Is the mandatory sentence of life imprisonment for conviction under A.R.S. § 13–1206 constitutional in this case?

The facts follow. Defendant and victim, Gary Ruffing, were inmates at the Arizona State Prison in Florence. On 2 August 1982 Ruffing was stabbed in the back with a sharpened welding rod while lifting weights. Ruffing testified he immediately turned around and saw the defendant who was 1 or 2 feet away. Defendant was the only other person in the area and was walking away from the victim. Ruffing said "Johnny, why did you do it," and started after the defendant, but decided instead to get medical attention. The wound was evidently not serious and only required minor bandaging.

The defendant was questioned by Officer J.D. Morgan of the Department of Corrections investigation unit. Morgan testified he informed the defendant of his *Miranda* rights and asked him if he wanted to talk. The defendant initially refused but then told Morgan he would talk if Assistant Warden Alfred M. Grijalva was present during the questioning. Grijalva was located and upon his entering the room, the defendant stated "I did him." Morgan testified he again informed the defendant of his *Miranda* rights and then questioned the defendant about the crime. Morgan said the defendant told the officers he was

part of a group that had decided Ruffing should be "hit." They drew lots and the defendant was selected. He then obtained a welding rod, sharpened it, and stabbed Ruffing. Grijalva testified in support of Morgan's version of the defendant's statements.

The defendant testified that he would not have talked to Morgan had Morgan not told him there was an eyewitness to the crime. Also, Morgan told him that if he would cooperate, the defendant would only face prison disciplinary action rather than a trial for deadly assault by a prisoner. Morgan denies this promise was made. Defendant further testified that the story he told Morgan and Grijalva about the stabbing was a lie fabricated to keep the investigation inside the prison disciplinary system. The court found the defendant's statements were voluntarily made and denied his motion to suppress.

Defendant filed an initial brief appealing from the verdicts and judgments of guilt. Subsequently, this court permitted the substitution of counsel who filed a second brief raising additional issues. We consider the issues raised in both briefs.

I. Explanation of the confession

■ The defendant insists he was not allowed to divulge fully his reasons for giving a confession, including the fact he knew that conviction of dangerous or deadly assault would result in a minimum of twenty-five more years in the penitentiary. At trial, the defendant testified:

Q [by Mr. Cardenas, defendant's attorney] What did you tell Officer Morgan about how you did it?

A [the defendant] Well, I told Officer Morgan that I went out onto the field that morning and went into the—I don't know the correct name of it, it is a building next to the weight area that they keep athletic supplies in, and I told him I got a piece of metal out of there and I think I told him I went to the southwest corner of the complex and made a knife out of it and then returned and stabbed Ruffing and left.

Q Okay. Did you in fact stab Ruffing?

A No, I did not.

Q Why did you tell Officer Morgan that you did?

A Well, when Officer Morgan first asked me if I had stabbed Inmate Ruffing, I denied it, and due to some recent, I guess you could call them pressures, peer pressures in prison, I decided that since I was close to the board, I only had four months to parole, that when he told me hey, I will leave it to the disciplinary court, I just told myself I can do fifteen days' isolation, that is nothing, you know, and still make my board instead of getting a twenty-five to life sentence for something I didn't do.

After a bench conference, it was agreed not to refer before the jury to the specific punishment imposable under the statute, but only to a long prison sentence. Morgan was later examined concerning the inmates' knowledge of the penalty for dangerous or deadly assault:

Q [Cardenas] But it is also true, isn't it, Investigator Morgan that all inmates at the Arizona State Prison are indoctrinated when they arrive there, and one of the things they are indoctrinated in is if they commit an assault with a deadly weapon they will get a long prison term for which there is no discretion, that that long prison term is mandatory?

A [Morgan] I don't know that there is an indoctrination as such. I do know that the inmates are quite aware of what the possible penalties are for assault with a deadly weapon.

Q It is common knowledge, isn't it?

A Yes, it is.

Defendant contends in his brief:

Appellant's defense was that he did not stab Ruffing. Aside from the confession, the State presented no evidence of Appellant's motive for stabbing Ruffing. Appellant's credibility, therefore, was critical to his defense to explain why he

initially confessed to an offense he had not committed. His credibility would have been enhanced had he been allowed to explain that he knew the punishment for deadly assault by a prisoner was a life sentence without the possibility of parole until he had served twenty-five calendar years. It was this knowledge, coupled with the promise that the stabbing incident would be disposed of at a prison disciplinary court, that induced him to confess. The State did not want evidence of the mandated penalty presented to prevent the jury from learning the penalty Appellant would receive if they convicted him.

Even if we could agree with the logic of defendant's argument, we can find no prejudice to the defendant. The matter of the extent of the mandatory nature and length of the sentence was brought out to the jury by the defendant, and other witnesses were allowed to refer to a "very long sentence" for commission of the crime. How the defendant's counsel handled this in closing argument we do not know, since the closing argument was not designated as part of the record on appeal. Rule 31.8(b), Arizona Rules of Criminal Procedure, 17 A.R.S. We find no prejudice to defendant.

Defendant contends, however, that *State v. Morales,* 120 Ariz. 517, 587 P.2d 236 (1978) supports his position. The defendant's reliance on Morales is misplaced. In Morales, a juvenile was called to testify against the appellant. The accused attempted to present the fact that the juvenile agreed to testify against the appellant in order to avoid conviction and a sentence of death or twenty-five years to life under our first-degree murder statutes. We held it was reversible error for the trial court to refuse to allow evidence of what was perhaps the primary reason the witness was willing to testify against the defendant.

That is not the case here. The witness in question is the defendant. Defendant was allowed to present his explanation as to why he confessed to the jury. The jury merely chose to believe Morgan's testimony that there were no promises made to the defendant in exchange for cooperation. We find no error.

## II. Effective Assistance of Counsel

Defendant next argues that he did not receive effective assistance of counsel. An affidavit by the defendant in support of this contention is included in defendant's brief. In the affidavit, defendant maintains that he told his attorney, prior to trial, that inmate Frederick Rankin was with him in the exercise yard and could have testified that he did not stab Ruffing. Additionally, inmate Ron Burt would have testified that he and the defendant walked together from the opposite corner of the compound to the basketball court, not directly from the weight lifting area to the basketball court as Ruffing had said. Defendant contends that defense counsel's failure to call these men was a serious error.

We do not agree with the defendant for two reasons. First, there is not a sufficient factual basis to support this allegation. All we have before us is the self-serving affidavit of the defendant. There are no affidavits from Burt and Rankin. Defendant may, of course, petition for a hearing pursuant to Rule 32, Arizona Rules of Criminal Procedure, 17 A.R.S., in which the witnesses could be called to testify in support of defendant's factual allegations. The facts contained in defendant's affidavit and presented for the first time on appeal, however, are not sufficient to persuade us to set aside the conviction.

Second, we have reviewed the entire record and do not find that the defendant was inadequately represented. We have recently reviewed the standard to be applied in cases involving allegations of ineffective assistance of counsel. In *State v. Watson,* we stated that "the proper standard is whether under the circumstances the attorney showed at least minimal competence in representing the criminal defendant." 134 Ariz. 1, 4, 653 P.2d 351, 354 (1982). In *State v. Lee,* we held that defendant must not only show that his attorney acted with less than minimal competence but must also show that "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." 142 Ariz. 210, 214, 689 P.2d 153, 157 (1984). This holding was to apply retroactively. *Id.* at 219, n. 5, 689 P.2d at 162, n. 5.

■ Even if we assume that the defendant's attorney refused to call Rankin and Burt, whether or not to call a witness is a strategic decision, ABA Standards § 4–5.2, and "[w]e have always held that disagreements as to trial strategy * * * will not support an ineffectiveness claim, as long as the challenged conduct could have had some reasoned basis." Watson, supra. There are a number of reasons why an attorney may choose not to call a witness, including a concern that the witness may perjure himself "or that his participation in the defense may harm the defendant more than his testimony, * * *, will aid him." *State v. Workman,* 123 Ariz. 501, 503, 600 P.2d 1133, 1135 (App.1979). Unless the defendant is able to show that counsel's decision was not a tactical one but, rather, revealed ineptitude, inexperience or lack of preparation, ABA commentary to Rule 4–5.2, we will not find that counsel acted improperly. Because defendant has made no such showing, we find no error.

### III. Sufficient Evidence

Defendant next argues that the evidence presented by the state was not sufficient to support convictions of dangerous assault and possession of a deadly weapon.

■ On appeal, we will not reweigh the evidence to decide whether we would have reached the same conclusion as the jury. *State v. Tison,* 129 Ariz. 546, 552, 633 P.2d 355, 361 (1981), cert. denied, 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147 (1982). Instead we will only determine whether there was sufficient evidence such that a rational trier of fact could find guilt beyond a reasonable doubt. *State v. Mincey,* 141 Ariz. 425, 687 P.2d 1180 (1984) [slip op. at 9]. This evidence must be "more than a scintilla and * * * such proof as a reasonable

mind would employ to support the conclusion reached." *Tison,* supra.

■ We find that there was sufficient evidence to support convictions on both charges. First, both Morgan and Grijalva testified that defendant had told them that he had obtained a welding rod, sharpened it and stabbed Ruffing. Additionally, Ruffing testified that he had pulled a sharpened welding rod out of his back, turned around and saw defendant walking away from him. This evidence was sufficient for a jury to find that defendant had carried or possessed a deadly weapon, A.R.S. § 31–232, and had committed assault using the deadly weapon. A.R.S. § 13–1206.

### IV. Constitutionality of A.R.S. § 13–1206

■ The defendant's last contention is that A.R.S. § 13–1206 mandates a constitutionally excessive sentence in this case. He notes the injury inflicted was not serious and therefore claims life imprisonment is disproportionate to the crime. The defendant cites the test set forth by the United States Supreme Court in *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). That test determines whether a sentence is constitutionally excessive by considering: (1) the gravity of the offense, (2) the harshness of the penalty, (3) the sentence imposed on similarly situated defendants in the same jurisdiction, and (4) the sentence imposed for commission of the same crime in other jurisdictions. *Solem,* supra, at ——, 103 S.Ct. at 3010, 77 L.Ed.2d at 650. *See also State v. McNair,* 141 Ariz. 475, 483–484, 687 P.2d 1230, 1238–1239 (1984).

We considered a similar question in *State v. Garcia,* 141 Ariz. 97, 685 P.2d 734 (1984). In Garcia, the appellant was convicted of threatening Department of Corrections officers with a large metal bar while attempting to escape from the Fort Grant Correctional Center. We upheld the constitutionality of the statute even though no one was injured by the appellant. The facts of the instant case are more egregious. The defendant stabbed Ruffing with a sharpened welding rod. Though Ruffing, fortunately, was not seriously injured, he very easily

could have been. We do not think the harshness of the penalty is disproportionate to the gravity of the offense or disproportionate to similar crimes in other jurisdictions or in Arizona. *Garcia,* supra. We find no error.

Affirmed.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS, J., concur.

FELDMAN, Justice, specially concurring.

I do not agree with the analysis involving A.R.S. § 13–1206, the eighth amendment to the United States Constitution and Article 2, § 15 of the Arizona Constitution. My views on that subject are set forth in my concurring opinion in *State v. McNair,* 141 Ariz. 475, 687 P.2d 1230 (1984). Because I see no reasonable possibility that this offender would have received a sentence which would have made him eligible for parole in less than twenty-five years, I concur in the result as well as in all other parts of the opinion.