845 P.2d 1097

**STATE of Arizona, Appellee,**

v.

**William David WEST, Appellant.**

**No. 1 CA–CR 89–1242.**

Court of Appeals of Arizona, Division 1, Department B.

May 21, 1992.

Review Denied March 2, 1993.

---

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Appeals Div., and Diana P. Stabler, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Paul C. Klapper, Deputy Public Defender, Phoenix, for appellant.

## OPINION

JACOBSON, Judge.

This appeal was originally filed pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and defendant filed a *pro per* supplemental brief. After reviewing the record, this court *sua sponte* noted numerous discrepancies in the verdict and sentencing transcripts and minute entries. We issued an order suspending the appeal and revesting jurisdiction in the trial court to hold hearings for the purpose of clarifying and correcting the record, and then allowing rebriefing. After hearings and entry of an order clarifying the record, defense counsel again filed an *Anders* brief, defendant filed another *pro per* supplemental brief, and the state responded. At this procedural juncture, we address the issues raised by defendant in both sets of supplemental briefs, and

search the record for fundamental error pursuant to A.R.S. § 13–4035. Although we find no error that would require reversal of defendant's convictions, we find inconsistencies in the record that require this matter to be remanded once more for a redetermination of the amount of restitution. As to other inconsistencies that appear in the record, we resolve those by modification of several counts of defendant's convictions.

*Facts and Procedural Background*

Defendant was charged by indictment with one count of fraudulent schemes and artifices, a class 2 felony, thirty counts of theft, class 3 felonies, and one count of theft, a class 4 felony. The state alleged that most of these counts were repetitive pursuant to A.R.S. § 13–604 and *State v. Hannah,* 126 Ariz. 575, 617 P.2d 527 (1980).

Most of the charges arose out of defendant's sales in 1986 and 1987 of the Houston Eight Tracker, an electronic device that allegedly allowed owners of television satellite dishes to unscramble cable station video broadcasts. Through his sole proprietorship, Weststar, defendant promoted the sale of this device to elderly residents of Sun City to whom he had previously sold satellite dishes in 1984 and 1985. Most of the counts involved customers who had paid defendant for the device and had never received it.

Defendant apparently ran a successful business selling satellite dishes until early 1986, when the cable industry began scrambling its transmissions. In 1986, defendant began offering his customers an upgrade of their existing systems, to include the installation of the Houston Eight Tracker. Many of the customers paid between $1,500.00 and $2,500.00 for the system, which defendant never delivered. Defendant also experienced financial problems in his business due to difficulties with the Internal Revenue Service, and eventually went out of business. He was discharged in bankruptcy in 1988. Many of the victims in this criminal prosecution were listed as creditors whose debts were discharged.

Defendant entered into a stipulation with the state to waive a jury trial in exchange for the state's agreement to dismiss the allegations of *Hannah* priors. Defendant executed a waiver of trial by jury, and the trial court, after addressing defendant in open court, found the waiver was knowing, voluntary, and intelligent. *See* Rule 18.-1(b), Arizona Rules of Criminal Procedure.

Prior to trial, the parties entered into a stipulation regarding the elements of certain counts of the indictment, including victims' names, dates and amounts paid, and an admission that those victims never received the merchandise paid for. Prior to trial, the state moved to dismiss counts 8, 10, and 16, for the reason that they could not find the victims or they were deceased. The trial court dismissed those counts with prejudice on June 26, 1989.

At trial, witnesses testified as to defendant's business practices, and other evidence was admitted, including evidence of defendant's gambling expenditures during the time that he was receiving funds from the victims.

At the close of evidence, and after denying defendant's Rule 20 motion, the trial court orally announced its "verdict" on July 5, 1989. The court found defendant "not guilty" of counts 8, 10, and 16 (the three counts that had previously been dismissed). The court also amended count 23 by reducing the amount of the theft from $2,120.00 to $2,000.00, to reflect the stipulated evidence regarding that count. The transcript of that hearing, however, did not reflect that the court found defendant guilty of any of the remaining counts, although the minute entry from that date indicates that the court found defendant guilty of 28 counts, but not including count 15. The court issued a *nunc pro tunc* order on July 12, 1989, to include count 15 in the previous minute entry.

At a hearing on August 8, 1989, the court denied defendant's post-trial motion

for a judgment of acquittal or new trial, and also denied defendant's motion for findings of fact and conclusions of law, ruling as follows:

> I don't think I have any notes any more that I made during the course of trial so I really need to go back now and try to recapture everything that I did when I was deciding the case. I know I took the exhibits, if I remember the case correctly, home over the week end and reviewed them and made notes and threw those notes away when I returned. I am, I believe, unable in this situation to make a finding of fact and conclusion since it is not a civil case. For that reason I deny your motion.

At sentencing, the transcript indicates that the court entered its judgment of guilt on counts 2 through 8, 9, 11 through 15, 17 through 23, 26, 27, and 32, omitting counts 24, 25, 28, 29, 30, and 31, and erroneously entering judgment on count 8, which had been dismissed. The minute entry, however, contains no sentence for counts 8 or 11, but includes sentences for the counts omitted from the transcript. The court suspended imposition of sentence and place defendant on seven years probation on the class 2 felony, five years probation on the class 3 felonies, and four years probation on the class 4 felony, to be served concurrently. The transcript indicated that the court also ordered defendant to pay restitution in the amount of $64,682.85 to the victims, while the minute entry ordered defendant to pay $64,782.85, although the individual amounts itemized on the minute entry do not total either of these amounts, and count 23 includes $375.00 more than the stipulated loss and amended count regarding that victim. The court also ordered that defendant pay $100.00 per count to the victim's compensation fund, although the transcript indicates a total amount of $700.00 to this fund and the minute entry orders a total of $2,900.00 to the fund.

Based on these discrepancies, this court ordered a remand for clarification. Subse-

quently, the trial court held two hearings for that purpose on October 24 and 29, 1990, at which the court took testimony from the court reporter who had transcribed the proceedings, and counsel made avowals to the court regarding their recollections of the events at the verdict and sentencing hearings. At the first hearing, the prosecutor was not present because he had not received a minute entry regarding the hearing, and the court telephonically contacted him. The prosecutor indicated that his sentencing notes indicated that defendant was convicted on all counts except 8, 10, and 16, which were dismissed. However, the prosecutor's recollection of the date of the court's verdict differed from the date in the court file and the court reporter's notes. Defendant's appellate counsel stated that, although he was "not too comfortable with what [he] did in the appeal," he had contacted the court reporter prior to filing the appeal and notified her that the transcripts were not correct. The defense counsel who was present at the verdict stated that he did not make any notes in the public defender's case file regarding on which counts defendant was convicted. Other defense counsel, who was present at sentencing, stated that he had not reviewed the transcript of the verdict prior to sentencing, and just "assumed" that defendant was found guilty of the counts that had not been dismissed. The court reporter testified that she used several scopists in transcribing her notes, and did not do the final proofreading of the transcripts so that errors slipped through. She apparently transcribed the court's word "through" as a numerical "three" when reporting the counts.

After these hearings, the court made the following findings:

> The record in this case, both minute entries and transcripts, are atrocious. It appears that all concerned were faulty in tracking and making a proper record. The exception was the Deputy Maricopa County Attorney, Mr. Larry Morehouse.
>
> Trial counsel for the defendant, Mr. Harrington and Mr. Walz, stated that

they made no record at all of the counts on which their client was convicted or acquitted. Mr. Walz explained that this was one of the problems of having "coverage" attorneys. Even though he was not the trial counsel, he appeared for Mr. West at the time of Sentencing.

The clerk in this case made several errors on the minute entry which compounded other errors made.

This Court by failing to diligently review minute entries also contributed to and compounded the error and discrepancies.

The court reporter by failing to properly proofread and/or accurately transcribe or report proceedings also contributed to and caused numerous errors in the record.

The court then concluded that the corrected record should indicate that defendant was found not guilty of counts 8, 10, and 16, and guilty of all the remaining counts. However, the court did not review the discrepancies in amounts defendant was ordered to pay in victim's compensation fund and restitution. The court subsequently ordered the supplemental record filed with the court of appeals, and the parties submitted supplemental briefing.

Defendant's appellate counsel again submitted an *Anders* brief,[1] defendant submitted another *pro per* supplemental brief, and the state responded.

### Issues Presented

■ Defendant raises several issues in his supplemental brief that are not reviewable in this appeal. His contention that the grand jury heard perjured testimony is not an appealable issue. *See* Rule 12.9, Arizona Rules of Criminal Procedure (a chal-

lenge to grand jury proceedings alleging that defendant was denied a substantial procedural right must be filed no later than 25 days after the transcript and minutes of the grand jury proceedings have been filed). His arguments that the prosecutor committed misconduct, that he was coerced into waiving trial, and that he received ineffective assistance of trial counsel are not supported by the record on appeal, but would require an evidentiary record that could be created through a petition for post-conviction relief pursuant to Rule 32, Arizona Rules of Criminal Procedure. *See, e.g., State v. Crowder,* 155 Ariz. 477, 747 P.2d 1176 (1987) (voluntariness issues); *State v. Carver,* 160 Ariz. 167, 771 P.2d 1382 (1989) (ineffective assistance issues).

■ Defendant's additional contention that the trial court erred in denying his motion to allow him to represent himself with the public defender appointed as "co-counsel" is unsupported by Arizona law. Defendant has no right to such "hybrid representation." *State v. Stone,* 122 Ariz. 304, 594 P.2d 558 (1979); *State v. Rickman,* 148 Ariz. 499, 715 P.2d 752 (1986). Defendant's remaining arguments are addressed separately below.

1. *Trial court's failure to make findings of fact and conclusions of law*

■ Defendant contends that the trial court's denial of his motion to make findings of fact and conclusions of law constitutes error because it denied him notice of the basis of the court's verdict. The state points out that there is no requirement in criminal cases that the court make such findings and conclusions analogous to Rule 52, Arizona Rules of Civil Procedure ("In all actions tried upon the facts without a jury or with an advisory jury, the court, if

---

1. Appellate defense counsel has twice submitted *Anders* briefs in this case, raising no arguable issues, when the record indicates deplorable discrepancies in the trial court's orders. Obviously, this court engaged in a more thorough review of the record on both occasions than did counsel. We note that the issue requiring remand in this matter was raised on this court's own motion after routine review of the record revealed the discrepancies, and the opinion-worthy issue—whether defendant's bankruptcy precluded restitution—was raised by defendant's own *pro per* brief, and was ignored by the state in its response. Both this court and counsels' respective clients deserve better advocacy than has been afforded in this case.

requested before trial, shall find the facts specially and state separately its conclusions of law thereon. . . .''). The Arizona Rules of Criminal Procedure do not require the trial court to make such findings and conclusions; we therefore do not find error in the trial court's failure to do so.

Nevertheless, we do note that the Arizona Supreme Court has encouraged trial courts to state on the record their reasons for their decisions in criminal cases to lessen the appellate burden. *State v. Fisher*, 141 Ariz. 227, 236 n. 1, 686 P.2d 750, 761 n. 1 (1984). In this case, such findings potentially would have avoided the massive confusion and errors that have occurred in this record.

### 2. *Restitution*

■ Defendant also challenges the restitution order requiring him to pay $64,-782.85 to the individual victims, on the following grounds:

This was listed in my bankruptcy filed in Arizona Federal Court January, 1988, and was discharged in May 1988. The State of Arizona at no time objected to the discharge of the Bankruptcy.

My question to the Appeals Court, can the Maricopa County Court overrule the Federal Bankruptcy Court in this matter.

The state did not respond to this issue in its answering brief that addressed defendant's other *pro per* arguments.

The record contains defendant's Chapter 7 bankruptcy petition and discharge order, which include many of the debts owed to the individual victims listed in the counts in this case as unsecured creditors. The trial court had this information in the record when it made the restitution order. Because defendant's implicit argument is that imposition of restitution would constitute an illegal sentence under these circumstances, we believe the issue is squarely presented on direct appeal.

Although no Arizona case has decided this issue, the United States Supreme Court has held that, under federal bankruptcy law involving Chapter 7, a restitution obligation, imposed as a condition of probation in a state criminal proceeding, is not a dischargeable obligation in Chapter 7 bankruptcy proceedings. *Kelly v. Robinson*, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986). This is because, in Chapter 7 cases, such obligations fall under a statutory exception to discharge of debts "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss." *See* 11 U.S.C.A. § 523(a)(7). The Court focused on the rehabilitative purpose of restitution, despite the fact that "restitution is forwarded to the victim, and may be calculated by reference to the amount of harm the offender has caused." At 51, 107 S.Ct. at 362. The Court reasoned:

The criminal justice system is not operated primarily for the benefit of victims, but for the benefit of society as a whole. Thus, it is concerned not only with punishing the offender, but also with rehabilitating him. Although restitution does resemble a judgment "for the benefit of" the victim, the context in which it is imposed undermines that conclusion. The victim has no control over the amount of restitution awarded or over the decision to award restitution. Moreover, the decision to impose restitution generally does not turn on the victim's injury, but on the penal goals of the State and the situation of the defendant. . . .

Because criminal proceedings focus on the State's interests in rehabilitation and punishment, rather than the victim's desire for compensation, we conclude that restitution orders imposed in such proceedings operate "for the benefit" of the State. Similarly, they are not assessed "for . . . compensation" of the victim. The sentence following a criminal conviction necessarily considers the penal and rehabilitative interests of the State. Those interests are sufficient to place restitution orders within the meaning of § 523(a)(7).

*Id.* at 51–53, 107 S.Ct. at 362–63. This court also recently recognized the rehabilitative purposes of our criminal restitution requirement:

> Although reparation [of the victim] is one purpose of restitution, the goals and methods of restitution in a criminal case differ from those of damages in a civil action. [Citations omitted.]

> Another goal of restitution is rehabilitation of the convicted person. Rule 27.1, Arizona Rules of Criminal Procedure, 17 A.R.S.; *State v. Moore,* 156 Ariz. [566] at 567, 754 P.2d [293] at 294 [ (1988) ]; *State v. Merrill,* 136 Ariz. [300] at 301, 665 P.2d [1022] at 1023 [ (1983) ]. Such a requirement forces an offender "to recognize the specific consequences of his criminal activity and accept responsibility for those consequences." *Id.* at 302, 665 P.2d at 1024; *State v. Cummings,* 120 Ariz. 69, 583 P.2d 1389 (App.1978).

*State v. Iniguez,* 169 Ariz. 533, 536, 821 P.2d 194, 197 (App.1991) (holding that a civil settlement of the victim's claim against a defendant does not bar a restitution order for the same loss).

In *Kelly v. Robinson,* the restitution order was issued before the defendant filed for bankruptcy, and the defendant sought to have the debt to the state discharged by the bankruptcy court. In this case, however, defendant's debts to the victims were discharged before the restitution order was entered. *Kelly v. Robinson* therefore is not directly on point in this case.

However, implicit in defendant's argument is the contention that, by ordering restitution to victims to whom defendant's civil debts have been previously discharged in bankruptcy, the trial court has in effect reinstated those debts, contrary to federal law. We believe, therefore, that the reasoning in *Kelly v. Robinson,* that a restitution order does not create a "debt" prohibited under bankruptcy law between a defendant and his victim, is equally applicable here. In *Kelly,* the Court recognized the following reasoning of the New York Supreme Court:

> A bankruptcy proceeding is civil in nature and is intended to relieve an honest and unfortunate debtor of his debts and to permit him to begin his financial life anew. A condition of restitution in a sentence of probation is part of the judgment of conviction. It does not create a debt nor a debtor-creditor relationship between the persons making and receiving restitution. As with any other condition of a probationary sentence it is intended as a means to insure the defendant will lead a law-abiding life thereafter.

479 U.S. at 44–45, 107 S.Ct. at 358–59, *quoting State v. Mosesson,* 78 Misc.2d 217, 218, 356 N.Y.S.2d 483, 484 (1974). We agree that the restitution order does not create a "debt" between defendant and his victims, but is part of the criminal judgment imposed by the state that is not affected by his prior bankruptcy. We therefore find no error on this basis.

### 3. *Amount of Restitution*

■ We do, however, find discrepancies in the record regarding the amount of restitution that was imposed in this case. As previously noted, the total amount imposed does not agree with the total of the individual entries listed on the sentencing minute entry. Furthermore, although the trial court amended count 23 of the indictment by reducing the amount of the theft from $2,120.00 to $2,000.00 to conform to the evidence in the stipulation, it imposed restitution to that victim in the amount of $2,375.00, which is not supported in the record. No restitution can be imposed beyond that established by the conviction and factually supported by the record, unless defendant otherwise agrees. *See, e.g., State v. Pleasant,* 145 Ariz. 307, 701 P.2d 15 (App.1985).

■ Furthermore, the court overlooked an additional discrepancy on count 17, which alleged an amount of $2,200.00 al-

though the stipulated evidence on that count established that the victim had paid only $1,200.00. We therefore modify count 17 to conform to the stipulated evidence that the theft was in the amount of $1,200.00.

■ An additional problem is presented by count 28. The stipulated evidence is that the victim paid defendant $2,700.00 for the Houston Eight Tracker and a color television. Although she never received the satellite system, the evidence establishes that the victim did receive the television. This count was not amended to reflect the value of the satellite system alone. We also note that the presentence report indicates that she was reimbursed only $2,500.00 from the Registrar of Contractors, not the full amount of $2,700.00 claimed. This may reflect a deduction for the television she received, but we are unable to verify this.

Our review reveals a further problem in the factual basis supporting the restitution order. The amount ordered as restitution to the Registrar of Contractors for reimbursement to some of the victims does not equal the amounts listed in the presentence report as disbursed to those victims, and is not otherwise factually supported in this record.

■ In light of these discrepancies and because we cannot calculate from this record the correct amount of restitution, we must vacate that part of the sentencing order imposing restitution and remand this matter for a redetermination of the amount of restitution, at which the court should discern an accurate amount of restitution that is factually established in this record and based only on the counts on which defendant was convicted, as amended to conform to the evidence at trial. Defendant should be permitted to attend this hearing and allowed to contest any disputed amount. Any subsequent order of restitution will be separately appealable. *See State v. French*, 166 Ariz. 247, 248 n. 3, 801 P.2d 482, 483 n. 3 (App.1990). We strongly

suggest that the trial court's determinations be supported by factual references to the existing record to avoid any further confusion in any future potential appeal.

### 4. *Sufficiency of Evidence*

■ Defendant's next argument is that his convictions were not supported by the evidence, because the state did not establish his intent to defraud his victims. We will not reverse a trial court's determination on grounds of insufficient evidence unless there is a complete absence of probative facts or where the judgment is contrary to substantial evidence in the record. *State v. Sanders*, 118 Ariz. 192, 196, 575 P.2d 822, 826 (App.1978). Evidence is sufficient if there is more than a scintilla of proof for a reasonable mind to support the conclusion. *State v. Goswick*, 142 Ariz. 582, 586, 691 P.2d 673, 677 (1984).

As the state points out, this record contains evidence adequate to support the requisite mental state for both theft by misrepresentation and a fraudulent scheme or artifice to defraud. Defendant received cash in advance for his customers' orders, gave them untrue reasons for non-delivery, including unavailability, litigation with the manufacturer, and defectiveness of items. He spent the money received in advance on personal expenditures and gambling activities, while refusing C.O.D. delivery of the merchandise due to lack of business funds. He also misrepresented to the Registrar of Contractors, who had received more than forty complaints from defendant's customers concerning non-delivery, that his business was suffering from minor and temporary setbacks which he could correct, when he had previously gone out of business and had no intention of effecting delivery or refund to these customers. We agree with the state that this evidence is sufficient to support the trial court's determination that defendant possessed the requisite intent to be convicted of these crimes.

### 5. *State's Concession on Count 31*

■ Defendant also contends that the state conceded it did not have evidence

sufficient to convict him on count 31, and the court should have acquitted him on that basis.

Count 31 alleged that defendant had knowingly obtained, by means of a material misrepresentation, property or services of Rudolf Selo, in the amount of $1,800.00, in violation of A.R.S. § 13–1802. Regarding this count, the trial stipulation stated:

Rudolph Selo of Sun City, Arizona

a. Paid the defendant $1,800.00 for a solar water heater system for his pool on April 20, 1987.

b. The defendant never supplied the solar collecting unit.

c. Around the 26th of April, 1987, the defendant told Dr. Selo the reason he hadn't started installation was because he had to paint the collectors. He was given no other reason why installation was not performed.

At trial, defendant's service technician, John Neal, testified regarding a solar unit that was seized by the Internal Revenue Service:

Q. Now, we have these documents that were provided by the defendant which indicate that a solar panel with a tank was seized and sold by the IRS. Are you aware of such a system, solar panel tank?

A. There was a solar panel with a tank in the showroom that used to help facilitate the sale and sold them.

Q. Also, it has been at this point the evidence Dr. Selo paid $1,800 for a pool solar heating unit. What was that unit?

A. That would have been a unit taken off of a Mr. Freezer's home at Mr. Freezer's request, which we stored for quite awhile. That would have been the one that would have gone on.

Q. To Dr. Selo?

A. To Dr. Selo.

In his closing argument, however, the prosecutor remarked:

Dr. Selo, I am troubled about how he got in [the indictment]. There is evidence that the IRS got Dr. Selo's water heater for his pool, solar water heater. Also there was testimony by John Neal that there were two water heaters, two solar water heaters, one displaced with the tank, that may have been in the IRS records, it does have the report, et cetera, behind it. John Neal said the one intended for Dr. Selo's house, we didn't have any indication where that went. That is probably our weakest count.

... I would ask the Court to find the defendant guilty of all charges except Dr. Selo. I am not sure of that one myself.

We interpret the prosecutor's remarks to constitute an implicit motion to dismiss count 31. The trial court's verdict of guilt on that count, and subsequent denial of defendant's motion for judgment of acquittal on that count, constituted an implicit denial of the state's motion to dismiss. The question before us, then, is whether the trial court abused its discretion in denying the state's request for dismissal of count 31.

Rule 16.5, Arizona Rules of Criminal Procedure, provides that upon motion of the prosecutor for dismissal, the court "may" order that a prosecution be dismissed if the purpose of dismissal is not avoidance of the Rule 8 time limits. Defendant contends that the prosecutor's concession in closing argument required the trial court to acquit him on count 31. We disagree that this result is mandated by Rule 16.5. The trial court is not required to dismiss a prosecution simply because the prosecution concedes the weakness of the evidence at some point in the proceedings. Our supreme court has noted that a prosecuting attorney's role, after indictment, is limited to *recommending* to the court that a count be dismissed, but the prosecutor does not have the "sole authority" to agree to a dismissal. *State v. Johnson,* 122 Ariz. 260, 265, 594 P.2d 514, 519 (1979). The comment following Rule 16.5 indicates that the policy of the former rule was retained:

While a prosecuting attorney has discretion in deciding whether to bring a crimi-

nal action ..., he has no authority to dismiss a pending criminal prosecution. He can only recommend dismissal to the court but actual dismissal is solely within the court's discretion. Rule 239, Rules of Criminal Procedure, 17 A.R.S.; see *People v. Parks*, 230 Cal.App.2d 805, 41 Cal.Rptr. 329 (1964).

*Id., quoting Application of Parham*, 6 Ariz.App. 191, 193, 431 P.2d 86, 88 (1967).

We therefore conclude the state's concession that count 31 was supported by conflicting evidence, although impliedly a strong argument in support of dismissal of that count, did not require the court to dismiss that count, because the court retained discretion under Rule 16.5 to deny a motion to dismiss by the prosecution. As the comment to Rule 16.5(b) points out, a "motion to dismiss tests the basic legal sufficiency of the prosecution" when made by a defendant; we do not believe the test is any different when a court considers a prosecutor's motion to dismiss under these circumstances.

 In determining whether the trial court abused its discretion in denying the state's implicit request for dismissal of count 31, we therefore look to the standards used to determine sufficiency of evidence to support a conviction. We will not enter a judgment of acquittal on appeal unless there is no substantial evidence in the record to warrant the conviction. *State v. Roberts*, 144 Ariz. 572, 698 P.2d 1291 (App.1985). Evidence is sufficient if there is more than a scintilla of proof to support the conclusion. *Goswick*, 142 Ariz. at 586, 691 P.2d at 677.

We agree with defendant that the evidence is conflicting on this count. However, the stipulation provides the necessary evidence to support the allegation that Dr. Selo paid for merchandise in the amount of $1,800.00 that defendant misrepresented would be delivered, and which was never received. The trial testimony does not negate that evidence. As the state points out, "The trial court apparently was not

confused by the evidence as the prosecutor appeared to be," and concluded that the solar unit seized by the IRS was not the one promised to Dr. Selo. No trial testimony or evidence established that Dr. Selo actually received the unit for which he paid. Based on this record, we cannot find insufficient evidence to support the trial court's denial of the state's implicit motion to dismiss this count. *See id.*

### Conclusion

We have searched the record for fundamental error, pursuant to A.R.S. § 13-4035. Except for the discrepancies noted above, we have found no other error that would warrant reversal of defendant's convictions. We therefore affirm the convictions, as modified above to conform to the evidence. We also affirm the sentences of probation, but vacate the restitution order, and remand this matter for a redetermination of the proper amount of restitution.

KLEINSCHMIDT and GARBARINO, JJ., concur.