NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JOSHUA ADAM CARROLL, *Appellant.*

No. 1 CA-CR 25-0109

FILED 06-26-2026

Appeal from the Superior Court in Maricopa County
No. CR2024-006503-001
The Honorable Kevin B. Wein, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Tucson
By Kyle Fields
*Counsel for Appellee*

Lorona Mead PLC, Phoenix
By Jess A. Lorona
*Counsel for Appellant*

**MEMORANDUM DECISION**

Presiding Judge Andrew M. Jacobs delivered the decision of the Court, in which Judge Brian Y. Furuya and Judge James B. Morse Jr. joined.

**J A C O B S**, Judge:

¶1          Joshua Carroll, a former Glendale Police Officer, appeals his conviction for misdemeanor aggravated assault, arguing insufficient evidence supports it.  For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

### A.          Carroll Is Charged with Aggravated Assault for Using Physical Force While Conducting an Arrest.

¶2          On June 13, 2019, then-Officer Carroll responded to a welfare call reporting someone apparently asleep or impaired behind the wheel of a suspicious vehicle parked at an apartment complex.  Carroll arrived at the scene, parked behind the suspicious vehicle, and spoke with its occupant, Sparks (a pseudonym we use to protect the victim's privacy) for several minutes.  Carroll asked Sparks to identify himself and explain his presence at the apartment complex.  Sparks gave only his first name and said he was there to visit a friend.  Sparks asked repeatedly whether he could use the bathroom and whether he was free to leave.  Carroll told him he was not free to leave.  After several minutes of back and forth, Carroll requested non-emergency backup.  Several minutes later, Carroll asked for backup to 'step it up,' indicating a more urgent need for support.

¶3          Moments after requesting urgent backup, Carroll attempted to remove Sparks from his vehicle, and a struggle broke out.  Carroll attempted to subdue Sparks, and Sparks resisted.  Ultimately, Carroll gained physical control over Sparks and handcuffed him.  Backup officers arrived and Sparks was taken to a nearby hospital.  A Maricopa County grand jury indicted Carroll on one count of aggravated assault for his use of force while arresting Sparks.

### B.          At Trial, the Parties Dispute the Facts That Would Establish Whether Carroll's Use of Force Was Justified.

¶4          The case went to trial in December 2024.  The State argued Carroll committed aggravated assault when he used physical force against Sparks after Sparks was handcuffed and could no longer resist.  *See* A.R.S. § 13-1204(A)(4).  Carroll argued he did not commit aggravated assault and that his actions were justified — either as general self-defense under A.R.S. § 13-404(A) or self-defense available to a law enforcement officer under A.R.S. § 13-409 — because he reasonably feared for his life.  The trial focused on whether: Carroll or Sparks initiated the physical confrontation; Sparks

acted defensively in resisting arrest; and Carroll's use of force was justified after Sparks was subdued.

### 1.     Carroll and Sparks Struggle.

¶5      Carroll, after radioing for non-emergency backup and telling Sparks to stay in his car, opened the driver's side door of Sparks' car. Carroll claimed he did so because Sparks did not comply with his instruction to keep his hands on the steering wheel, so Sparks "kind of forced my hand that if he's not going to keep his hands where I can see them, then I need to create a way where I can see them." Carroll also claimed he opened the door so that Sparks would have fresh air.

¶6      Expert testimony on this subject was unfavorable for Carroll. Carroll's expert, Dr. Jeffery Hynes, initially testified Sparks opened the car door, portraying it as threatening. But on cross-examination, Dr. Hynes admitted Carroll opened the door. Lon Bartel, the State's expert, testified Carroll's decision to open Sparks' door, and Carroll's generally inconsistent instructions to Sparks, needlessly confused the situation. Officer Shawn Dirks, who conducted the Glendale Police Department's review of the incident, testified Sparks tried to comply with Carroll's instructions, but Carroll told Sparks "to first get out of the car, then stay in the car, then get out of the car, then stay in the car," which was "very, very confusing." Glendale Police Sergeant Bryan Johnson, who interviewed Sparks after the incident and reviewed footage of the incident, testified Carroll should have left Sparks' car door closed and waited for backup.

¶7      Carroll then grabbed Sparks and tried to pull him out of the car. This was the first physical contact between Carroll and Sparks. Carroll said he did so because Sparks was brandishing his keys. Bartel and Johnson both testified Carroll's decision to grab Sparks was inconsistent with police training and that he should have waited for backup instead. After Carroll grabbed Sparks, the men struggled. Carroll repeatedly Tased Sparks. Carroll struck Sparks in the head with his fists and Taser. Sparks grabbed Carroll's arms, tried to wrest the Taser from him, and kicked him. Sparks also caused his vehicle to reverse into Carroll's parked police vehicle.

¶8      After Carroll pulled Sparks fully out of the vehicle, he cuffed one of Sparks' hands behind his back. Carroll then delivered several more blows to Sparks' head. Eventually, Carroll fully handcuffed Sparks. Carroll's expert Dr. Hynes admitted Carroll delivered "additional blows" after both of Sparks' hands were in handcuffs. Dirks testified Carroll used his taser as "an instrument" to strike Sparks after Sparks was "bound."

3

¶9        Carroll then dropped or threw Sparks to the ground. Carroll said he picked Sparks up and dragged him to the sidewalk so he would not be near the running vehicle. He said he was exhausted and collapsed on top of Sparks to brace his own fall. But Dr. Hynes, Bartel, and Dirks all testified Carroll threw Sparks down. A neighbor and an officer saw Carroll on top of Sparks when Sparks was handcuffed and unable to resist, and Sparks was moaning in pain. Sparks' head wound required three staples.

### 2.    Carroll Marshaled Testimony Seeking to Show His Use of Force Was Justified.

¶10       Carroll testified he acted reasonably under the circumstances because he believed Sparks: (1) might be armed; (2) was likely breaking the law, either because he was substance-impaired or because he was trespassing; (3) was uncooperative and unresponsive to questions, likely due to being substance-impaired; and (4) posed a threat to his safety and even his life. Carroll said that he made the decision to "go hands on" because Sparks had "displayed verbal noncompliance" and "displayed passive aggression." And he said that he viewed Sparks' physical resistance as assault on a police officer, thus justifying his uses of force.

¶11       Dr. Hynes largely agreed with Carroll, saying the "totality of the circumstances" showed his fear was genuine and his actions reasonable. He said that Sparks' resistance to Carroll's force was aggressive, not defensive. He also suggested Carroll actually showed restraint, and that he would have been justified in using deadly force under the circumstances.

¶12       Bartel disagreed. He testified Carroll escalated the situation and that Sparks' behavior seemed defensive, not aggressive. Sergeant Johnson also said, in his opinion, that Sparks was acting defensively, not threateningly. Bartel and Johnson also testified the video did not show Carroll informing Sparks he was being detained for inebriation or performing the standard steps of a DUI investigation, despite Carroll's later explanations for the detention.

### C.    The Jury Cannot Reach a Unanimous Verdict, the Court Declares a Mistrial, and the Parties Agree to Submit the Case to the Judge for a Verdict.

¶13       After the parties rested, the jury deliberated and informed the court it could not reach a unanimous verdict, so the court declared a mistrial. The parties then agreed the State would designate the aggravated assault charge as a misdemeanor, Carroll would waive his right to a jury

4

trial, and the matter would be submitted to the court for a verdict based on the evidence, testimony, and exhibits previously admitted at trial.

¶14 The court found Carroll guilty of aggravated assault. First, it found the State proved "the elements of aggravated assault beyond a reasonable doubt." The court found that "[w]hile Carroll sat on top of [Sparks] and at times while [Sparks] had at least one hand in handcuffs, Carroll repeatedly struck [Sparks] with both his fists and his taser. These blows caused physical injury including a head wound that bled profusely." The court rejected Carroll's general self-defense and law enforcement self-defense justifications. It found the State proved beyond a reasonable doubt "that the force [Carroll] used *was* greater than reasonably necessary to defend against the danger" he faced and "that the use of physical force here was unnecessary." The court further found the force Carroll used "included prolonged strikes to the head that continued long after [Sparks] had been subdued and culminated with Carroll throwing the fully handcuffed and injured victim to the pavement." And the court emphasized that "[i]n the lead-up to the assault and eventual detention of [Sparks], Carroll issued increasingly confusing commands that needlessly exacerbated the situation. Rather than wait for backup, it was Carroll who first opened the door to the car and then initiated the physical encounter by reaching in and attempting to remove [Sparks] from the vehicle. Notably, this occurred less than 30 second [sic] after Carroll instructed [Sparks] to remain in the car, a command that [Sparks] followed." The court thus concluded the evidence proved "beyond a reasonable doubt that Carroll's actions were not justified," making him guilty of aggravated assault.

¶15 The court sentenced Carroll to one year of supervised probation. Carroll timely appealed. We have jurisdiction. *See* Ariz. Const. art. 6, § 9; A.R.S. §§ 12-120.21(A)(1), 13-4031, -4033(A)(1).

## DISCUSSION

¶16 Carroll argues there was insufficient evidence to support the superior court's verdict that he committed aggravated assault. Sufficiency of the evidence is a question of law we review *de novo*. *State v. West*, 226 Ariz. 559, 562 ¶ 15 (2011). "Viewing the evidence in the light most favorable to sustaining the [court's] verdict[], and resolving all inferences against the defendant, we must determine whether the state presented evidence that 'reasonable persons could accept as sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt.'" *State v. Duncan*, 257 Ariz. 360, 368 ¶ 10 (App. 2024) (quoting *State v. Spears*, 184 Ariz. 277, 290 (1996)).

¶17        "We will not reverse a trial court's determination on grounds of insufficient evidence unless there is a complete absence of probative facts or where the judgment is contrary to substantial evidence in the record. Evidence is sufficient if there is more than a scintilla of proof for a reasonable mind to support the conclusion." *State v. West*, 173 Ariz. 602, 610 (App. 1992) (cleaned up).

## I.        Sufficient Evidence Supported the Court's Conclusion Carroll Committed Aggravated Assault.

¶18        Carroll argues "[t]he evidence was insufficient for a rational trier of fact to conclude beyond a reasonable doubt that [he] committed aggravated assault." The State responds that it adequately proved the elements of aggravated assault. We agree with the State.

¶19        The State bore the burden of presenting evidence sufficient for a rational jury to conclude, beyond a reasonable doubt, that Carroll intentionally caused Sparks physical injury while Sparks was physically restrained or while his capacity to resist was substantially impaired. *See* A.R.S. §§ 13-1203, -1204. A person "commits assault" under § 13-1203 by "[i]ntentionally, knowingly or recklessly causing any physical injury to another person." A.R.S. § 13-1203(A)(1). That assault is aggravated if committed "while the victim is bound or otherwise physically restrained or while the victim's capacity to resist is substantially impaired." A.R.S. § 13-1204(A)(4).

¶20        We agree with the superior court that "[t]here is little dispute that Carroll's action[s] meet the definition of aggravated assault." The superior court found that "[w]hile Carroll sat on top of [Sparks] and at times while [Sparks] had at least one hand in handcuffs, Carroll repeatedly struck [Sparks] with both his fists and his taser. These blows caused physical injury including a head wound that bled profusely."

¶21        This was "evidence that 'reasonable persons could accept as sufficient to support [the] conclusion of [Carroll's] guilt beyond a reasonable doubt.'" *Duncan*, 257 Ariz. at 368 ¶ 10 (quoting *Spears*, 184 Ariz. at 290). The court also found Sparks' capacity to resist was substantially impaired because he was either fully or partially handcuffed when the assault occurred – this finding satisfied the statutory elements of aggravated assault. *See* A.R.S. § 13-1204(A)(4). Because "[w]e will not reverse a trial court's determination on grounds of insufficient evidence unless there is a complete absence of probative facts or [] the judgment is contrary to substantial evidence in the record," *West*, 173 Ariz. at 610, we

conclude there was sufficient evidence to support the court's conclusion Carroll committed aggravated assault.

II.     **Sufficient Evidence Supported the Court's Finding That the State Disproved Carroll's Justification Defenses.**

**¶22**          Carroll argues the State failed to adequately disprove his justification defenses.  He says his actions were justified when judged in the light of a reasonable officer on the scene.  He says the State showed only an expert disagreement over police tactics, and that "[t]he video evidence, far from resolving the dispute, was ambiguous."   The State says the court correctly found Carroll's justifications disproved beyond a reasonable doubt.  It says the court rightly concluded that "Carroll's force was neither reasonably necessary nor immediately necessary," and that Carroll's assertion that the trial evidence was ambiguous and presented only an expert dispute over police tactics fails to appreciate that the court assessed the credibility of each witness and made factual findings sufficient to support its verdict.  The State is correct, as we next explain.

      A.     **Sufficient Evidence Supported the Court's Conclusion That the State Disproved Carroll's General Self-Defense Justification.**

**¶23**          Carroll first argues a general self-defense justification.  Under it, a "person is justified in using physical force against another, and does not commit a crime, 'when and to the extent a reasonable person would believe that physical force is immediately necessary to protect himself against the other's use or attempted use of unlawful physical force.'" *State v. Carson*, 243 Ariz. 463, 465 ¶ 9 (2018) (quoting A.R.S. § 13-404(A)).

**¶24**          Carroll argues he established his objective reasonableness by testifying "to the danger he felt during his altercation with [Sparks]," and to his belief that Sparks "was impaired, non-compliant, attempting to flee, and actively assaulting" him.  He further asserts that "the State needed to show not just that another tactic was possible, but that" his "conduct was unreasonable beyond a reasonable doubt."

**¶25**          Carroll's arguments fall short of establishing that the State failed to "present[] evidence that 'reasonable persons could accept as sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt.'" *Duncan*, 257 Ariz. at 368 ¶ 10 (quoting *Spears*, 184 Ariz. at 290).  The court received the evidence Carroll says should prompt us to reverse, but was unpersuaded by it.  The court concluded instead that "the force used *was* greater than reasonably necessary to defend against the

danger." And though Carroll says the jury's inability to reach a unanimous verdict shows there was insufficient evidence to support his conviction, the evidence is sufficient for us to affirm even if "jurors could reasonably differ as to whether the evidence establishes the necessary facts." *Duncan*, 257 Ariz. at 368 ¶ 10. We cannot "reweigh evidence or reassess the witnesses' credibility," *id.* (quoting *State v. Buccheri-Bianca*, 233 Ariz. 334, 334 ¶ 38 (App. 2013)), so we cannot simply decide for ourselves that the court should have credited Carroll's and his expert's testimonies, as he argues.

¶26 Instead, the law requires us to ask whether "there is more than a scintilla of proof" upon which the court could have reached its conclusion. *West*, 173 Ariz. at 610. There is. As the court found, Carroll used force that was greater than reasonably necessary to defend himself by administering "prolonged strikes to [Sparks'] head that continued long after [Sparks] had been subdued and culminated with Carroll throwing the fully handcuffed and injured victim to the pavement." This record provides far "more than a scintilla of proof" to support that finding. *See id.* As such, we cannot say insufficient evidence supported the court's conclusion that Carroll's actions were not justified as general self-defense.

B. **Sufficient Evidence Supports the Court's Conclusion That the Law Enforcement Self-Defense Justification in A.R.S. § 13-409 Does Not Aid Carroll.**

¶27 Carroll also asserted a self-defense justification specifically available to law enforcement officers under A.R.S. § 13-409. For that defense to apply, all three of the following conditions must exist: (1) "[a] reasonable person would believe that such force is immediately necessary to effect the arrest or detention or prevent the escape[;] (2) [s]uch person makes known the purpose of the arrest or detention or believes that it is otherwise known or cannot reasonably be made known to the person to be arrested or detained[; and] (3) [a] reasonable person would believe the arrest or detention to be lawful." A.R.S. § 13-409.

¶28 As an initial matter, there was sufficient evidence to support the superior court's conclusion that "the State has proven beyond a reasonable doubt that the use of physical force here was unnecessary." As the court noted, less than 30 seconds after Carroll told Sparks to stay in the car — a command Sparks obeyed — Carroll chose not to wait for backup and escalated the situation by opening the door to Sparks' car and then initiating contact by reaching in and attempting to remove the compliant Sparks from the vehicle. The record supports the court's finding that Carroll's use of force was not immediately necessary to effect his arrest or

detention of Sparks because "[i]n the lead-up to the assault and eventual detention of [Sparks], Carroll issued increasingly confusing commands that needlessly exacerbated the situation."

¶29      Despite those proofs, Carroll asks us to find he acted reasonably under the circumstances, citing *Graham v. Connor*, 490 U.S. 386 (1989) and *Marquez v. City of Phoenix*, 693 F.3d 1167 (9th Cir. 2012). But those cases concerned constitutional challenges to officers' use of force. *Graham* instructs that they "are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard," *Graham*, 490 U.S. at 386, and *Marquez* explains the relevance of competing expert testimony when assessing officers' particular use of force as part of the balancing required by *Graham*. 693 F.3d at 1174. Here, Carroll was not alleged to have violated Sparks' Fourth Amendment rights. Rather, he stood accused of aggravated assault and sought to rely on a statutory justification defense, which the State was required to disprove beyond a reasonable doubt. Because sufficient evidence supports the court's conclusion that Carroll failed to prove the first element of law enforcement self-defense under A.R.S. § 13-409 beyond a reasonable doubt, Carroll's appeal on this issue fails. *West*, 173 Ariz. at 610. The federal authorities he cites concerning different issues not present here are not applicable nor are they to the contrary.

## CONCLUSION

¶30      We affirm. Carroll did not file a separate request for oral argument, as ARCAP 18(a) requires. Because oral argument would not have aided our resolution of this appeal, we did not set argument in reaction to the informal request on Carroll's brief's caption page.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:      JR