**Robert CABLA, Jr., Appellant,**

v.

**The STATE of Texas**

**No. 1639–98.**

Court of Criminal Appeals of Texas.

Dec. 8, 1999.

17. *State v. Mason,* 980 S.W.2d 635, 638 (Tex. Crim.App.1998).

Cynthia J. Cline, Houston, for appellant.

Keli Pool Roper, Asst. DA, Houston, Matthew Paul, State's Atty., Austin, for the State.

## O P I N I O N

HOLLAND, J., delivered the opinion of the Court, in which McCORMICK, P.J., MANSFIELD, KELLER, PRICE, and WOMACK, J.J., joined.

The trial court convicted appellant of theft, sentencing him to ten years confinement. *See* TEX. PENAL CODE ANN. § 31.03(e)(6). The trial court suspended imposition of this sentence and placed appellant on community supervision for a period of ten years. *See* TEX.CODE CRIM. PROC. ANN. Art. 42.12 § 6. As a condition of probation, appellant was ordered to pay a total of $66,412.88 in restitution to nine separate victims. *See* Article 42.12 § 11. In a single point of error, appellant argued on direct appeal that the trial court could not order restitution for debts which had been discharged in bankruptcy proceedings. Stating that appellant failed to show the trial court's order of restitution was an abuse of discretion, the court of appeals overruled appellant's point of error and affirmed the judgment of the trial court. *See Cabla v. State*, 974 S.W.2d 927, 928 (Tex.App.-Houston [14th Dist.] 1998).

This Court granted appellant's petition for discretionary review on the issue of "whether a State court may order restitution in a criminal case for an obligation based upon a debt which has been discharged by a federal court in a bankruptcy proceeding." We will affirm.

## I.

Appellant worked as a general contractor in the home remodeling business in Houston. He received advance payments from the victims on remodeling and construction contracts. Appellant either completely failed to do the contracted work or performed below acceptable standards under the contracts. In December of 1994, appellant declared bankruptcy and alleged the money he owed on the contracts was discharged in that proceeding. In March of 1995, however, the State indicted appellant for theft of funds he received in payment on some of the contracts.

At trial, the State advanced the theory that appellant knew at the time he entered into the contracts that he could not perform promises made in those contracts. This pattern of behavior repeated with each of the nine complaining witnesses from August of 1992 through November of 1993. The State argued the pattern of behavior demonstrated both that appellant never intended to complete the contractual work and that he deceived victims into believing he would perform the promises in order to continue receiving their payments. The State asserted appellant knew he would never perform the promises. Instead, he used the promises to deceive victims out of their money.

Appellant argued this case involved civil issues best resolved in a civil court and claimed he was guilty only of having made bad business decisions. Appellant stated he planned to perform the promises made, and he did not have criminal intent to deceive any of the nine complaining witnesses out of their money. When he shut the doors to his business, appellant filed for bankruptcy under Chapter Seven of the Bankruptcy Code and listed every one of the complaining witnesses as a creditor. Appellant claimed the bankruptcy proceedings discharged each of these debts, and he accused the complaining witnesses of using criminal court to pursue collections on contractual debts.

The trial court ruled in favor of the State, finding appellant guilty of theft. The trial court took every instance of appellant's failure to perform a contract as evidence that appellant knew, at the time he received the money, he was not going to perform the contractual work. The trial court then decided to place appellant on community supervision and ordered him to pay restitution to the victims of the theft. Although the State sought $112,000 in restitution for the victims, the trial court determined appellant took $66,412.88 with no intention of performing the work for which they paid him. The trial court ordered appellant to pay $66,412.88 in restitution to the victims over the term of his community supervision. Appellant objected to the assessment of restitution, arguing the matter was within the exclusive jurisdiction of the bankruptcy courts, the claims had all been discharged in appellant's bankruptcy proceedings, and appellant's bankruptcy discharged any obligation to pay the victims. Appellant appealed this argument in a single point of error.

The court of appeals overruled appellant's point of error. The court relied upon the Supreme Court's opinion in *Kelly v. Robinson,* 479 U.S. 36, 50, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), wherein the Court decided that once restitution is imposed, a subsequent bankruptcy does not discharge the obligation. *See Cabla,* 974 S.W.2d at 928. Pointing to the Fifth Circuit's decision in *United States v. Pepper,* 51 F.3d 469, 473–74 (5th Cir.1995), the court of appeals concluded that a prior bankruptcy cannot prevent a court from ordering restitution of a victim whose claim had been discharged in bankruptcy. The court of appeals relied upon the Fifth Circuit's reasoning that a bankruptcy proceeding and a criminal prosecution are fundamentally different in both purpose and procedure and, therefore, the resolution of one proceeding will "seldom resolve" the other. *See Cabla,* 974 S.W.2d at 928. Because appellant had cited no authority to support his arguments, the court of appeals saw no reason to depart from the Federal courts's decisions on this matter. *See id.* Appellant requested this Court review the court of appeals's decision.

## II.

There are inherent differences between the creditors and debtors of bankruptcy proceedings and the victims and defendants of criminal proceedings. These differences are reflected in the goals of the different proceedings. The Legislature adopted the Code of Criminal Procedure to govern our state's criminal proceedings with the goals of the "prevention, suppression and punishment of crime." *See* TEX. CODE CRIM. PROC. ANN. art. 1.26. Restitution was intended to "adequately compensate the victim of the offense" in the course of punishing the criminal offender. *See* TEX.CODE CRIM. PROC. ANN. art. 42.12 § 9(a). These compensations include "property damage or medical expenses" sustained by the victim as a direct result of the offense. TEX.CODE CRIM. PROC. ANN. art. 42.12 § 11(a)(14).

In this system, although restitution might appear to be a judgment benefitting the victim, "the context in which it is imposed undermines that conclusion. The victim has no control over the amount of restitution awarded or over the decision to award restitution." *Kelly v. Robinson,* 479 U.S. 36, 50, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986). Control over payment of restitution remains solely with the trial court. The trial court's powers to fix the amount of restitution, the terms of payment, and to enforce the payment are non-delegable. *See* 42 GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 38.121 at 686 (1995 & Supp. 1999). In *Kelly,* the Supreme Court also explained that restitution is a component of the criminal justice system "not operated primarily for the benefit of the victim, but for the benefit of society as a whole." *Kelly v. Robinson,* at 50, 107 S.Ct. 353. Society is benefitted by punishment, including restitution, that is directly related

to the offenses for which a defendant has been charged and convicted.

■ This principle is reflected in the rules and limits governing the imposition of restitution orders. As punishment, restitution attempts to redress the wrongs for which a defendant has been charged and convicted in court. *Martin v. State*, 874 S.W.2d 674, 678 (Tex.Crim.App.1994)("... notions of justice and fairness dictate that a defendant be punished only for the crime of which he was convicted."). Restitution orders are focused on the victims of the offenses for which a defendant has been convicted. The legislature did not intend for restitution to be "ordered payable to persons, other than the victim of the offense of conviction, who also suffered as a result of a scheme of which the offense of conviction was a part." *See id.* at 677–78. This Court has concluded that the focus of restitution orders are limited to the individuals alleged and proven to be the victims of the charged offense. *Id.; See also Ex parte Lewis*, 892 S.W.2d 4, 6 (Tex.Crim.App.1994)(Limiting restitution orders to the proven victims of the charged offense is "equally applicable to restitution as a condition of probation.").

■ Additionally, the amount of a restitution order is limited to only the losses or expenses that the victim or victims proved they suffered as a result of the offense for which the defendant was convicted. *See Gordon v. State*, 707 S.W.2d 626, 629–30 (Tex.Crim.App.1986). In *Gordon*, this Court decided we would not allow the defendant to be punished "for a crime of which [he] was acquitted." *Id.* at 629. We explained that a trial court may not impose a restitution order based upon conduct having no basis in the record. *Id.* at 628; *see also Cartwright v. State*, 605 S.W.2d 287, 289 (Tex.Crim.App.1980)(Principles of due process require there be evidence in the record to show a factual basis for the amount of restitution ordered.).

■ In contrast, the goal of the bankruptcy system is not to punish, but to allow the honest debtor to re-start his financial life. In *Kelly v. Robinson*, the Supreme Court described the goal of bankruptcy proceedings. "A bankruptcy proceeding is civil in nature and is intended to relieve an honest and unfortunate debtor of his debts and to permit him to begin his financial life anew." *Kelly*, 479 U.S. at 46, 107 S.Ct. 353. The debtor selects the chapter of the Bankruptcy Code according to whether he needs to completely start over or whether he only needs to re-organize his debts. In the former situation, the debtor files for liquidation of his debts, or straight bankruptcy, under Chapter 7 of the Bankruptcy Code. "[Chapter 7's] purpose is to achieve a fair distribution to creditors of whatever non-exempt property the debtor has and to give the individual debtor a fresh start through the discharge in bankruptcy." GEORGE M. TREISTER ET AL, FUNDAMENTALS OF BANKRUPTCY LAW, § 1.04, p. 17 (4ᵗʰ ed.1996). Any person is eligible for a Chapter 7 liquidation. *See id.* § 3.01, at 115.

In contrast, the debtor files for adjustment of his debts under Chapter 13 of the Bankruptcy Code. Chapter 13 is a rehabilitation vehicle for an individual with a regular income. The debtor's future earnings are budgeted to pay the creditors in whole or in part, and the debtor gets a fresh start from the discharge granted at the end of the case. *See id.* § 1.04, at 19. A person must have a regular income with unsecured debts of less than $250,000 and secured debts of less than $750,000 to qualify for a Chapter 13 adjustment. *See id.* § 3.01, at 117. An individual debtor or sole proprietor of a small business with a regular income may seek an arrangement with creditors under Chapter 13 in order to continue to operate his or her business. *See* BENJAMIN WEINTRAUB, ET AL, BANKRUPTCY LAW MANUAL ¶ 1.02[2], at 1–5 (3ʳᵈ ed.1992).[1] The goal of a bankruptcy pro-

---

1. Under the Bankruptcy Code, debtors can file for discharge under special provisions other than Chapter 7 or Chapter 13. Other provisions in the code provide for bankruptcy

ceeding is to relieve the debtor of his financial obligations and permit the debtor to start his or her financial life over. The goals and purposes of restitution and bankruptcy differ greatly.

Therefore, this Court must decide in the instant case whether a trial court can order a defendant to pay restitution of a sum already discharged as an honest debt in a bankruptcy proceeding. As this is an issue of first impression before this Court, we shall look to prior decisions of the U.S. Supreme Court and the Fifth Circuit Court of Appeals for guidance.

## III.

In the instant case, appellant filed for a Chapter 7 bankruptcy. In *Kelly v. Robinson*, the inherent differences between the goal of the bankruptcy system and the goals of a restitution order led the Supreme Court to conclude a Chapter 7 liquidation of debt proceeding in bankruptcy cannot discharge a restitution obligation.

..., [T]he Supreme Court was faced with the question of whether a state court restitution order imposed on a criminal defendant as a condition of probation in a larceny case involving the wrongful receipt of welfare benefits constituted a nondischargeable fine or penalty as opposed to compensation for actual pecuniary loss. Because criminal proceedings focus on the state's interests in rehabilitation and punishment, rather than the victim's desire for compensation, the Court concluded that restitution orders imposed in criminal cases are nondischargeable penalties payable for the benefit of a governmental unit and are not compensation for actual pecuniary loss.

WEINTRAUB, *supra*, ¶ 3.09[7], at 3–67 n. 121.

Four years after the Supreme Court decided *Kelly v. Robinson*, it was called on to answer the question whether an individual could discharge a restitution obligation under Chapter 13 of the Bankruptcy Code. In *Pennsylvania v. Davenport*, 495 U.S. 552, at 559–61, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990), the Court concluded that restitution obligations could be discharged in a Chapter 13 bankruptcy.

Less than one year after the decision in *Davenport*, Congress rejected the Supreme Court's decision in *Davenport* by altering the provisions controlling Chapter 13 bankruptcies. Congress changed the Bankruptcy Code to prevent individuals from discharging restitution obligations under Chapter 13. The House of Representatives added paragraph (3) to Section 1328(a) of the Bankruptcy Code "so that criminal restitution payments will be non dischargeable in Chapter 13. ... As a result of the change, no debtor with criminal restitution obligations will be able to discharge them through any bankruptcy proceeding." H. REP. No. 101–681 (1990), reprinted in 1990 U.S.C.C.A.N. 6472, 6571. This change left unaltered the Court's decision in *Kelly v. Robinson* that criminal restitution payments were non-dischargeable under Chapter 7. The Senate passed a similar provision preventing "Federal bankruptcy courts from invalidating the results of state criminal proceedings." S. REP. No. 101–434 (1990), reprinted in 1990 U.S.C.C.A.N. 4065, 4071. As a result of these changes, a state criminal defendant cannot use a Chapter 13 bankruptcy pro-

filings for municipalities, businesses, or family farmers. "Governmental units, including municipalities, agencies, and other government bodies, may not commence a bankruptcy case for liquidation. This exclusion applies even if the municipality is incorporated. Municipalities may, however, seek relief under Chapter 9 for the adjustment of their debts." WEINTRAUB, *supra*, ¶ 1.03[6], at 1–16. Chapter 11 is a "unified set of provisions for

all kinds of reorganization, usually for debtors engaged in business, including individuals, partnerships and corporations, and for both publicly and closely held companies. It's goal is to rehabilitate a business as a going concern rather than to liquidate it." Chapter 12 is designed to give special relief to a family farmer with a regular annual income. *See* TREISTER, *supra*, § 1.04, at 17–19.

ceeding to discharge his obligation under a restitution order. *See* 11 U.S.C. § 1328(a)(3) (1994).

Even though appellant filed for a Chapter 7 bankruptcy, and not for a Chapter 13 bankruptcy, we view the reaction of Congress to the *Davenport* decision as affirming the pervasive differences between the goals of the criminal justice system and the bankruptcy system. The changes in the Code revealed the intent of Congress that restitution obligations imposed in criminal proceedings cannot be discharged in any personal bankruptcy proceedings. The Fifth Circuit Court of Appeals has applied these principles in cases, similar to appellant's case, where the bankruptcy discharge preceded the criminal conviction.

In *U.S. v. Carson*, 669 F.2d 216 (5 th Cir.1982), the Fifth Circuit concluded a trial court did not abuse its discretion by ordering the defendant to pay restitution to a bank pursuant to his conviction for committing fraud in a loan application. Even though the debt had already been discharged in a bankruptcy,[2] the only effect of the discharge was to extinguish the defendant's liability on any civil claim arising out of the loan. The Fifth Circuit concluded the district court properly ordered the defendant to pay restitution to the bank "[in] the amount of [the bank's] loss as a result of [the defendant's] offense. Discharge or not, ... [the bank's] loss was not extinguished by the defendant's bankruptcy; if anything, it was fixed thereby." *Id.* at 217. Probation is "designed as a mild and ambulatory form of punishment intended to serve as a reforming discipline." Therefore, "the bankruptcy discharge did not prevent restitution from being ordered to make the victim whole and to subject [the defendant] to reforming discipline." *Id.* at 217–18.

The Fifth Circuit revisited the same issue in *U.S. v. Pepper*, 51 F.3d 469 (5 th Cir.1995). In *U.S. v. Pepper*, the defendant discharged his debts in a bankruptcy proceeding.[3] He was subsequently convicted in the United States District Court for the Northern District of Texas for aiding and abetting the commission of mail fraud, wire fraud and money laundering. The defendant had engaged in a scheme whereby he obtained the victims' money by promising they were investing in a telemarketing business selling water purifiers. He took the victims' money, never fulfilling his promise to purchase and re-sell water purifiers. The bankruptcy court treated the victims' money as loans made to the defendant and discharged them as debts. Therefore, the defendant argued that the district court could not order him to pay restitution to these investors because the debts had been discharged. The Fifth Circuit disagreed. *See id.* at 473.

The Fifth Circuit concluded,

[A] bankruptcy proceeding and a criminal prosecution are fundamentally different proceedings, both in purpose and procedure, and the causes of action resolved by each are totally different. The pursuit of one proceeding will seldom resolve the other. As such, we do not believe that a bankruptcy discharge has any effect on the district court's power to order restitution in a criminal case.

*Id.* The Fifth Circuit believed the defendant's bankruptcy discharge did nothing to relieve the loss suffered by the victims of his scheme. *See id.* at 474.

In *Carson* and *Pepper*, the bankruptcy proceedings preceded the criminal action, and the Fifth Circuit concluded restitution could still be ordered. Likewise, in the instant case, appellant also discharged his debts in bankruptcy proceedings before the State prosecuted him for theft. Following the decisions of the Supreme Court and the Fifth Circuit, we

**2.** The Fifth Circuit does not explain under which chapter of the Bankruptcy Code the defendant filed for bankruptcy.

**3.** The Fifth Circuit does not explain under which chapter of the Bankruptcy Code the defendant filed for bankruptcy.

conclude appellant's Chapter 7 bankruptcy did not preemptively discharge his restitution obligation.

At trial and on appeal, appellant asserted the victims were manipulating the criminal justice system to pursue collection of a previously discharged civil debt. This assertion, however, obscures the fact that the trial court convicted appellant of the charged theft and found appellant acted with criminal intent to deceive the victims and unlawfully appropriate their money. The trial court awarded restitution to the victims based on proof in the record of the amount of money received by appellant as a result of his criminal deception of the victims ($66,412.88).[4] The facts that the victims of appellant's offense were named as creditors in appellant's bankruptcy proceeding, or that the bankruptcy court discharged appellant's other "debts" prior to the conviction and restitution order, had no impact on the trial court's restitution order. The Supreme Court, the Congress and the Fifth Circuit have stated that restitution orders in criminal judgments cannot be discharged in bankruptcy proceedings.

█ If a restitution order lacks validity, or is suspected of lacking validity, or if the victims or the State are suspected of manipulating the process to collect a civil debt which has not been alleged or proven to have been criminally appropriated from them, that restitution order can be attacked on its own merits through the criminal process.[5] For example, if a trial court awards an amount in a restitution order that exceeds the amount which was proven at trial to have been criminally appropriated, or if it awards restitution to an individual either not named as a victim in the indictment or not shown to be a victim at trial, or if it attempts to award restitution for a crime other than the crime for which the defendant was convicted, or if it awards restitution for conduct that had no basis in the record, then the restitution order may be attacked on those grounds. A reviewing court can then determine whether or not the restitution order is valid on its own merits based on the trial

---

4. The trial court did not issue a restitution order based on the amount of money which was claimed by the victims ($112,000), since the record did not support the conclusion that appellant criminally appropriated all of this amount from the victims.

5. The concurring opinion would have this Court determine the validity of the restitution order based upon an inquiry into the subjective intent of the prosecution. Under this theory, the courts would have to try to "determine whether a *specific prosecution* was initiated with the intent to frustrate the Bankruptcy Code." *Ante*, at 546. The concurring opinion sets forth a test which was used by the Bankruptcy Court of Minnesota in *In re Brinkman*, 123 B.R. 318 (Bankr.D.Minn. 1991), which was in turn relied upon by the Tenth Circuit in *United States v. Kunzman*, 125 F.3d 1363, 1366 (10 th Cir.1997), *ante*, at 546, which would focus on the individual "prosecutor's subjective motivations for bringing an individual prosecution." *Id.* The *Brinkman* test is inapplicable for two reasons. First, the court's authority for this test was a Bankruptcy Court decision, *In re Kaping*, 13 B.R. 621, 623 (Bkrtcy.D.Or.1981), which pre-

dated both the *Kelly v. Robinson* decision in 1986 and the Congressional alterations of the Bankruptcy Code in 1990. Second, the court in *Brinkman* was influenced in reaching its conclusion by the fact the victim "had no input on how the case proceeds, the terms of a settlement or the possibility of restitution payments." *In re Brinkman*, 123 B.R. at 323. In appellant's case, and in every case in Texas involving restitution, that factor is systemic. In Texas, the provisions of the Code of Criminal Procedure controlling restitution effectively eliminate the victim from exerting any control or influence upon the trial court's decision to award restitution. *See* 42 GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 38.121 at 686 (1995 & Supp.1999). Also, the Supreme Court in *Kelly v. Robinson* commented on the lack of control and influence which a victim exerts in the decision to award restitution. *Kelly*, 479 U.S., at 50, 107 S.Ct. at 361. We conclude the decision in *In re Brinkman* has little, if any, advisory value for the dispute before us in the instant case. Moreover, any inquiry into the subjective motivations of a prosecutor, defense attorney, victim or trial court would be extremely difficult, if not impossible, to carry out.

record before it. *See Martin,* 874 S.W.2d at 677–78; *Gordon,* 707 S.W.2d at 629–30.

We conclude appellant's previous Chapter 7 bankruptcy did not discharge the trial court's restitution orders in appellant's conditions of probation. Moreover, we conclude in the instant case the restitution orders were valid because the evidence at trial established appellant committed a crime against the alleged victims and that he was ordered to pay restitution in the amount proven to have been unlawfully appropriated from those victims. Appellant's ground for review is overruled. The decision of the trial court is affirmed.

MEYERS, J., delivered a concurring opinion in which JOHNSON and KEASLER, J.J., joined.

MEYERS delivered a concurring opinion, in which JOHNSON and KEASLER, J.J., joined.

I agree with the Court's conclusion that the trial court did not abuse its discretion by ordering appellant to pay restitution as a condition of community supervision. In reaching the same result, however, I differ from the Court's opinion in one respect. The Court indicates that the "inherent differences between the creditors and debtors of bankruptcy proceedings and the victims and defendants of criminal proceedings" are always sufficient to place a state criminal restitution order outside the scope of the power usurped by Congress under the Bankruptcy Code. *Ante,* at 545. Based on this conclusion, the Court rejects appellant's contention that this *particular prosecution* was improperly motivated by a desire to aid the complainants in collecting debts discharged in bankruptcy. *See id.* at 548 – 550. The majority holds that "the restitution orders were valid because evidence at trial established appellant committed a crime against the alleged victims and that he was ordered to pay restitution in the amount proven to have been unlawfully appropriated from those victims." *Id.,* at 550. This conclusion implies that regard-

less of whether the actual purpose underlying a specific prosecution was to frustrate federal law, an order of criminal restitution will be upheld so long as the evidence is sufficient to support a conviction.

While bankruptcy proceedings serve different interests than criminal prosecutions and Congress did not intend to interfere with a state's restitutionary sentencing scheme by enacting Chapter 7, an inquiry into the sufficiency of the evidence does not necessarily solve the Supremacy Clause problem where there is an allegation that a *specific state prosecution* is motivated by a desire to circumvent the prohibitions of the federal Bankruptcy Code. In other words, where the actual purpose underlying a prosecution is to collect a discharged debt, a restitution order is not valid under the Supremacy Clause purely by virtue of the fact that the "evidence presented at trial established appellant committed a crime." *Id.* Where such an allegation is made, some inquiry into the purposes underlying the prosecution is necessary. To successfully prove that a condition of restitution interferes with the full effectiveness of the Bankruptcy Code, an appellant must show that the state criminal proceedings were commenced with the *intent* to frustrate federal law— that is, that the principal motivation behind the prosecution was to collect a discharged debt in circumvention of the Bankruptcy Code. Appellant fails to meet this burden. The judgment of the Court of Appeals should therefore be affirmed.

Although this is an issue of first impression before this Court, the conclusion that criminal restitution may generally be imposed despite a previous discharge of the underlying debts in bankruptcy is consistent with the great weight of authority from other jurisdictions. *See United States v. Pepper,* 51 F.3d 469, 473–74 (5th Cir.1995); *United States v. Carson,* 669 F.2d 216 (5th Cir. Unit B 1982); *United States v. Alexander,* 743 F.2d 472, 479–80 (7th Cir.1984); *United States v. Roberts,*

783 F.2d 767, 770–71 (9 th Cir.1985); *United States v. Kunzman*, 125 F.3d 1363, 1365–66 (10 th Cir.1997); *Barnette v. Evans*, 673 F.2d 1250 (11 th Cir.1982); *People v. Milne*, 690 P.2d 829, 837 (Colo.1984); *State v. Angle*, 353 N.W.2d 421, 424 (Iowa 1984); *State v. West*, 173 Ariz. 602, 845 P.2d 1097, 1103–04 (App.1992); *Baker v. State*, 616 So.2d 571 (Fla.Dist.Ct.App. 1993); *State v. Hamilton*, 129 Idaho 938, 935 P.2d 201, 205–06 (App.1997); *State v. Muzio*, 105 N.M. 352, 732 P.2d 879, 880–82 (App.1987); *State v. Eyre*, 39 Wash.App. 141, 692 P.2d 853 (1984); *State v. Foley*, 142 Wis.2d 331, 417 N.W.2d 920, 923–26 (App.1987); *People v. Stavrinoudis*, 154 Misc.2d 887, 586 N.Y.S.2d 865, 866–67 (N.Y.Dist.Ct.1992). Although each of these decisions construes the Bankruptcy Code as it relates to their own unique restitution statutes, they all have in common a fundamental concern for principles of federalism and judicial comity. These concerns militate in favor of an interpretation of the Bankruptcy Code that does not interfere with criminal sentencing schemes. *See Kelly v. Robinson*, 479 U.S. 36, 47, 107 S.Ct. 353, 360, 93 L.Ed.2d 216 (1986) ("Our interpretation of the [Bankruptcy] Code also must reflect the basis for [the] judicial exception [that criminal financial penalties are not dischargeable], a deep conviction that federal bankruptcy courts should not invalidate the results of state criminal proceedings. The right to formulate and enforce penal sanctions is an important aspect of the sovereignty retained by the States").

The great majority of courts that have addressed this issue agree that criminal prosecutions and federal bankruptcy proceedings serve vastly different interests. *See, e.g., Barnette*, 673 F.2d at 1251 ("The purpose of bankruptcy is to protect those in financial, not moral, difficulty. The bankruptcy courts were not created as a haven for criminals." (citing H.R. REP. No. 595, 95 th Cong., 2d Sess., 342, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6299)). The purpose underlying the federal bankruptcy law is to " 'relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes.' " *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934) (citing *Williams v. United States Fidelity & Guar. Co.*, 236 U.S. 549, 554–55, 35 S.Ct. 289, 290, 59 L.Ed. 713 (1915)). A state law that either "frustrates" or "conflict[s] with" this purpose will be invalidated under the Supremacy Clause of the federal constitution. *See Perez v. Campbell*, 402 U.S. 637, 649, 91 S.Ct. 1704, 1711, 29 L.Ed.2d 233 (1971).[1]

Texas law explicitly provides that restitution is a condition "personally related to the rehabilitation of the defendant." TEX. CRIM. PROC.CODE ANN. art. 42.12, § 11(b) (Vernon Supp.1999). Such a desire to implement the State's penal goals of rehabilitation and punishment is not inconsistent with the civil relief that a bankruptcy proceeding provides a debtor.[2] *See, e.g., Fo-*

---

1. Appellant argues that the reasoning of the Supreme Court in *Perez* is applicable in the instant case. Nevertheless, I agree with the majority's implicit holding that a probationary sentence conditioned on the payment of restitution generally does not interfere with the goals of the Bankruptcy Code as did the statute in *Perez*. *Perez* involved a Arizona law that sought to suspend the driver's license of an individual who failed to satisfy a tort judgment that had been previously discharged in a federal bankruptcy proceeding. *Id.*, 402 U.S. at 639, 91 S.Ct. at 1706. The Court concluded that the state legislation frustrated the full effectiveness of the federal law and was invalid under the Supremacy Clause. *Id.*, 402 U.S.

at 652 & 656, 91 S.Ct. at 1712 & 1715. Unlike *Perez*, criminal restitution generally does not involve an action to collect a *tort debt*, but rather seeks to punish and rehabilitate the person convicted of a crime. *See Eyre*, 692 P.2d at 854.

2. Appellant urges us to hold that restitution revives a "debt" in conflict with the "fresh start" policies of the Code. But appellant's reliance on *Pennsylvania Dept. of Pub. Welfare v. Davenport*, 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990), to establish this proposition is mislaid. Although *Davenport* held that criminal restitution was a "debt"

*ley*, 417 N.W.2d at 924 ("In a criminal justice system which focuses upon the offender and not the victim, ordering the offender to make restitution to his victim has a rehabilitative effect which is not incompatible with a 'fresh-start' approach"). Thus, a sentence that includes restitution does not generally intrude on the sphere of responsibility carved out by Congress under the Bankruptcy Code.[3]

Appellant next asserts that *this particular prosecution* was improperly motivated by a desire to collect on a discharged debt in violation of the Supremacy Clause. In other words, appellant alleges that his theft prosecution was a subterfuge for collecting the civil debts owed to the victims. The Bankruptcy Code prohibits the commencement of a criminal action to "collect, recover or offset" a discharged debt. 11 U.S.C.A. § 524(a)(2) (1993 & Supp.1999). Courts have taken different approaches in determining whether a *specific prosecution* was initiated with the intent to frustrate the Bankruptcy Code. For example, the Tenth Circuit has held that in order to be successful in challenging a restitutionary order, an appellant must show that the "principal motivation behind her prosecu-

tion was to collect on a discharged debt." *Kunzman*, 125 F.3d at 1366 (citing *In re Brinkman*, 123 B.R. 318, 322 (Bankr. D.Minn.1991)). This approach focuses on the prosecutor's subjective motivations for bringing an individual prosecution. On the other hand, in *State v. Muzio*, 732 P.2d at 881, the New Mexico Court of Appeals declined the appellant's invitation to examine the prosecutor's subjective motives in commencing criminal proceedings and instead focused on whether there was sufficient evidence to support the conviction. *Id.* The New Mexico court reasoned that the Bankruptcy Code was not so intrusive as to prevent criminal punishment where the state was able to prove that the appellant had engaged in the underlying criminal conduct with the requisite mental state. *Id.* Under this approach, the actual motivations of the prosecutor are irrelevant where the State can otherwise prove the elements of the crime. This is so, reasoned the *Muzio* court, because a criminal statute itself serves a punitive or rehabilitative purpose quite different from that embodied in the Bankruptcy Code. *Id.*

The majority's opinion adopts the approach articulated in *Muzio*. *See ante*, at

within the meaning of Chapter 13, that case is inapplicable on these facts for two reasons. First, as appellant himself acknowledges, in 1990 Congress overruled the result in *Davenport* by adding 11 U.S.C. § 1328(a)(3). That provision expressly withdraws the Bankruptcy Court's power to discharge restitution orders under § 1328(a). Second, *Davenport* dealt with discharge of debts under *Chapter 13*, not Chapter 7, as is the case here.

**3.** Although the Supreme Court resolved *Kelly v. Robinson* by way of statutory interpretation, and thus did not address a constitutional argument based on the Supremacy Clause, the Court's reasoning supports this conclusion. The Court emphasized that, " '[u]nlike an obligation which arises out of a contractual, statutory or common law duty, here the obligation is rooted in the traditional responsibility of a state to protect its citizens by enforcing its criminal statutes and to rehabilitate an offender by imposing a criminal sanction intended for that purpose.' " *Kelly*, 479 U.S. at 52, 107 S.Ct. at 362 (quoting *In re Pellegrino*, 42 B.R. 129, 133 (Bankr.D.Conn.

1984)). Thus *Kelly* illustrates the very different legislative priorities addressed by criminal punishment and by the Bankruptcy Code. While the debt relief afforded under the Bankruptcy Code and criminal restitution might seem at first to conflict inasmuch as the former seeks to protect a debtor from financial claims and the latter ultimately compensates that same individual as a victim of a crime, "[t]he pursuit of one proceeding will seldom resolve the other." *Pepper*, 51 F.3d at 473 (citing *United States v. Tatum*, 943 F.2d 370, 381–82 (4th Cir.1991)). Inasmuch as the majority points out these obvious differences between criminal restitution and bankruptcy relief, I agree that, *as a general matter*, no Supremacy Clause problem is presented. However, where an appellant is able to show that a state criminal prosecution is motivated primarily by a desire to circumvent the federal Bankruptcy Code, I do not agree with the majority's rule that these differences are by themselves sufficient to lift that proceeding out of the prohibition included under 11 U.S.C. § 524(a)(2). *See* discussion *infra* p. 546 – 547.

549–550. I disagree, however, that a conclusion that the evidence is sufficient to support the conviction necessarily resolves the Supremacy Clause problem.[4] Under § 524(a)(2), a discharge in bankruptcy will prevent any action designed to "collect a debt" which has been discharged. That section does not contain any language which would except criminal proceedings from that prohibition. Therefore, if the criminal prosecution is an action to collect a discharged debt, the restitution order will be prohibited. The obvious question, then, is whether the specific criminal prosecution is designed to vindicate the public good or to collect the debt for one of the defendant's creditors. The "principal motivation" test announced by the Tenth Circuit most closely implements the intent of the federal statute and avoids the problems posed by the Supremacy Clause.

Under the "principal motivation" test, appellant has the burden of proving by a preponderance of the evidence that the State's principal motivation in pursuing the criminal theft charges was to collect the debt discharged in bankruptcy. He failed to meet his burden. Appellant argues that statements made by the trial judge make it "clear on the record that its primary goal was to obtain restitution for the complainants."[5] Appellant's Brief at 12. Specifically, appellant cites the following statements made by the trial judge:

> I'm going to order him to pay restitution for the amount of money that I determine to be stolen. I don't care whether or not it's been a previously adjudicated debt in bankruptcy, been dissolved by bankruptcy, what not, I don't care about any of that, I'm just trying to determine what money I feel has been misappropriated as a result of the theft. That's what he will be ordered to repay. Whether or not it's been discharged by bankruptcy in a civil proceeding, I don't care.

Appellant's argument fails for two reasons. First, the trial judge's statements at sentencing may be interpreted as an expression of a desire to punish appellant for his wrongdoing. By emphasizing that the debt was discharged "by bankruptcy in a civil proceeding," the trial judge seemed to recognize the different rehabilitative and punitive purposes underlying criminal restitution. Second, and more importantly, the trial judge's statements do not go to the impetus behind the *prosecution* of appellant, but rather only address the trial judge's motivations during sentencing. A trial judge has no input into a decision to initiate criminal proceedings against an accused. That decision lies exclusively with the State. Thus the evidence in the record establishes that the prosecution of appel-

---

4. The Fifth Circuit's decisions in *Carson* and *Pepper*, relied on by the majority, are not dispositive of the Supremacy Clause issue. In each of those cases, the Fifth Circuit dealt with restitution orders in the context of *federal* criminal prosecutions. As such, the Supremacy Clause was not a factor in the court's decisions. However, in the case at bar, and in all *state* criminal prosecutions where restitution is ordered after the underlying debt had been discharged in a *federal* bankruptcy proceeding, serious federalism questions are presented.

5. Appellant also argues that the complainants in this case pressed criminal charges for the sole purpose of collecting the civil debts that were discharged in the previous bankruptcy proceeding. The obvious implication of appellant's allegation is that the prosecution itself was motivated by a desire to subvert the Bankruptcy Code. But there is no evidence that the *prosecutor* was motivated by such an illicit purpose. As the Supreme Court pointed out in *Kelly*, "[t]he victim has no control over the amount of restitution awarded or the decision to award restitution. Moreover, the decision to impose restitution generally does not turn on the victim's injury, but on the penal goals of the State and the situation of the defendant." *Kelly*, 479 U.S. at 52, 107 S.Ct. at 362. By the same token, a complainant does not have the final say in whether criminal charges are even pursued. That decision is left in the sole discretion of the prosecutor. Therefore, given the lack of control that a complainant has over a criminal prosecution, the motives of the complainants may not be attributed to the prosecution itself.

lant for theft was designed to enforce the State's criminal statutes.

The Court of Appeals should be affirmed. I concur in the Court's judgment.